■ In the Matter of GIL SHEARER, Petitioner, v ANTHONY J. ANNUCCI, as Acting Commissioner of Corrections and Community Supervision, Respondent. [65 NYS3d 249]—

McCarthy, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent finding petitioner guilty of violating certain prison disciplinary rules.

Petitioner was charged in a misbehavior report with possessing a weapon, smuggling and violating frisk procedures. According to the misbehavior report, an X ray revealed that petitioner had three scalpel blades in his abdomen area. Petitioner was placed on contraband watch, during which three scalpel blade handles were found in petitioner's feces. A subsequent X ray revealed that the scalpel blades were no longer in petitioner's body and a search of the drain pipe leading out of petitioner's room revealed three scalpel blades. Following a tier III disciplinary hearing, petitioner was found guilty as charged and that determination was affirmed on administrative appeal, with a modified penalty. This CPLR article 78 proceeding ensued.

We confirm. Initially, the misbehavior report, hearing testimony and related documentary evidence, including the X ray showing the presence of the scalpel blades, provide substantial evidence to support finding him guilty of possessing a weapon and smuggling (see Matter of Sparks v Annucci, 144 AD3d 1352, 1352-1353 [2016]; Matter of Hall v Fischer, 87 AD3d 1235, 1236 [2011]).* While no one witnessed petitioner put the scalpel blades in the drain, a maintenance employee testified that the drain would only contain items from the room

---

* Petitioner has abandoned any challenge to the finding that he violated frisk procedures by his failure to raise this issue in his brief (see Matter of King v Venettozzi, 152 AD3d 1115, 1116 [2017]; Matter of Mays v Cunningham, 140 AD3d 1511, 1512 [2016]).

in which petitioner was placed and a correction officer testified that the room had been searched prior to petitioner being placed there and no contraband was found. While petitioner argues that there is no documentary evidence indicating that the room had been searched, this does not necessarily negate the inference that he possessed the blades (*see Matter of Diaz v Prack*, 127 AD3d 1489, 1490 [2015]; *Matter of Green v Fischer*, 98 AD3d 771, 771-772 [2012]).

Contrary to petitioner's contention, the misbehavior report provided sufficient information to place him on notice of the charges and afford him an opportunity to prepare a defense (*see Matter of Richardson v Annucci*, 133 AD3d 966, 967 [2015]; *Matter of Maletta v Amoia*, 122 AD3d 962, 963 [2014]). While the testimony contained additional facts not included in the misbehavior report, that is expected. The misbehavior report is a summary that must contain the basic information, which can be expanded upon and supplemented by testimony. Moreover, the report was properly made by a correction officer who had "ascertained the facts of the incident" through both his investigation and participation in the search of the drain (7 NYCRR 251-3.1 [b]; *see Matter of Mears v Venettozzi*, 150 AD3d 1498, 1499 [2017]; *Matter of Galdamez v Goord*, 43 AD3d 1237, 1238 [2007]) and was endorsed by another officer who had personal knowledge of some of the relevant facts.

Turning to petitioner's contention that the hearing was not completed in a timely manner because two extensions were not authorized until after the prior extensions had expired by one day, we note that compliance with the regulatory time limits contained in 7 NYCRR 251-5.1 "is directory only and there is no indication of any substantive prejudice to petitioner resulting from the delay" (*Matter of Comfort v Irvin*, 197 AD2d 907, 908 [1993], *lv denied* 82 NY2d 662 [1993]; *accord Matter of Mills v Annucci*, 149 AD3d 1593, 1594 [2017]; *see Matter of Bilbrew v Goord*, 33 AD3d 1107, 1108 [2006]). Further, while there are recurring gaps and certain typographical errors in the hearing transcript, they are not so substantial as to preclude meaningful review (*see Matter of Afrika v Blackman*, 149 AD3d 1369, 1370 [2017]; *Matter of Bailey v Prack*, 140 AD3d 1508, 1509 [2016], *lv denied* 28 NY3d 904 [2016]), especially considering that we were also provided the tapes themselves. We reject petitioner's contention that portions of the hearing transcript had been falsified, as there is no indication that the transcript had been altered and the discrepancies between the audio tapes and the transcript raised by petitioner appear to be mere typographical errors (*see Matter of Gaston v*

*Fischer*, 109 AD3d 1063, 1064 [2013]). Additionally, although the scalpel blades and handles were photographed together and the information in the contraband/evidence photograph card incorrectly states that both the blades and the handles were found in the floor drain, the Hearing Officer's statement of evidence relied on in making the guilty determination correctly reflects that the items were recovered at different times and in different locations and there is no indication that any improper inference was made by the items being photographed together. Accordingly, inasmuch as the Hearing Officer did not rely on the information on the photograph card in reaching his determination, the error was harmless (*see Matter of Justice v Fischer*, 67 AD3d 1286, 1287 [2009], *lv denied* 14 NY3d 709 [2010]; *Matter of Seymour v Goord*, 24 AD3d 831, 832 [2005], *lv denied* 6 NY3d 711 [2006]). We have reviewed petitioner's remaining claims, including that the Hearing Officer was biased, and find them to be without merit.

Lynch, Rose, Clark and Pritzker, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.